UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:18-CR-033 JD |
| | ) | |
| DAVID GIBSON (01) | ) | |
| JERRY HARRIS (03) | ) | |

**OPINION AND ORDER**

Defendants David Gibson and Jerry Harris have been indicted with conspiring to distribute over one kilogram of heroin [DE 1]. Harris has moved to suppress evidence arguing that the court order authorizing the location tracking of the conspiracy's suspected drug phone was not sufficiently premised on probable cause as required by *Carpenter v. United States*, 138 S.Ct. 2206 (2018) [DE 127]. Gibson has joined the motion [DE 132]. For the following reasons, the Court denies the motions.

**I. FACTUAL BACKGROUND**

During the Spring of 2017, investigators learned that at least one cellular phone with phone number (872) 333-5822 ("the drug phone") was being shared by at least twelve individuals to distribute heroin at the retail level in South Bend, Indiana. Customers would call the drug phone and order heroin, typically sold by the half-gram. Whichever dealer possessed the drug phone at the time would arrange a meeting with the customer. At the meeting location, someone would show up and sell heroin to the customer. Eventually, undercover buys were executed using both confidential informants and undercover officers, but investigators were unable to identify any one particular person as the primary user or possessor of the drug phone; rather, the subscriber was listed as "John John."

On July 20, 2017, Investigator Brandon Stec of the St. Joseph County Drug Investigations Unit ("DIU") signed a template (or form) affidavit setting forth a summary of key points in the investigation [Gov't Exb. 1, Def. Exb. 1, DE 129-1]. He described two controlled purchases of heroin in May and July of 2017, that were arranged and executed by calling the drug phone. Investigator Stec believed that, given his twelve years of law enforcement experience, including time spent investigating narcotics violations, drug traffickers used cellular communication devices to place and receive telephone calls and text messages in furtherance of their drug trafficking activity. Thus, Investigator Stec opined that by acquiring the location information for the drug phone, the users' location, identity, and apprehension would be obtained.[1]

Later that day, a judge from the superior court issued the location tracking order which expired after thirty days.[2] The order indicated that probable cause existed to believe that the user of the drug phone had been engaged in illegal drug dealing and that the apprehension of the user would be obtained through use of Global Positioning System ("GPS") location tracking technology [Gov't Exb. 2, Def. Exb. 1, DE 129-2]. DIU investigators submitted similar updated affidavits and obtained similar court orders allowing the continued GPS tracking of the drug phone through October 18, 2017 [Gov't Exbs. 3-6, Def. Exb. 1, DE 129-3, 4, 5, 6]. The location

---

[1] At this point in the investigation, the identities of Jerry Harris and David Gibson were not known, but the government does not contest that they possessed the drug phone.

[2] The order was issued pursuant to Federal Rule of Criminal Procedure 41 and Sections 3117, 3123, 3124, and 2703 of Title 18, and it authorized the cellular service provider to be compensated for the reasonable expenses incurred in providing the technical assistance. The DIU investigators testified at the suppression hearing that they were not familiar with these code provisions; rather, they simply supplied the state judge with their standard template forms.

information received from the cellular service provider was essentially real time (as long as the drug phone was turned on) and relatively precise (sometimes within nine to ten meters).

Defendant Harris, joined by Defendant Gibson, have moved to suppress evidence of their alleged crimes[3] arguing that the state court orders were not sufficiently premised on probable cause, per *Carpenter*.

## II. DISCUSSION

*Probable Cause*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967)). And because "an individual maintains a legitimate expectation of privacy in the record of his physical movements," the Supreme Court held in *Carpenter* that accessing seven days' or more worth of historical cell-site location information was enough to require the securing of a warrant supported by probable cause. *See* 138 S.Ct. at 2217-21.

In this case, the defense argues that a state court order issued pursuant to the Stored Communications Act, 18 U.S.C. § 2703 ("SCA"), is not a permissible mechanism for tracking the location of the drug phone.[4] In other words, the defense contends that because the SCA was

---

[3] The parties agreed to delay identification of the particular evidence that would be subject to suppression until after the Court determined the merits of the motions to suppress.

[4] Although *Carpenter* concerned accessing historical cell-site records and it did not invalidate warrantless tower dumps (which identifies phones near one location at one time, as here), *see United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019), the Seventh Circuit has recognized that *Carpenter* may grant a defendant a constitutionally protected privacy interest in his

3

explicitly cited in the state court search orders, then the issuing judge looked only for "reasonable grounds" for believing that the information was "relevant and material to an ongoing criminal investigation" under 18 U.S.C. § 2703(d), as opposed to making a determination that individualized probable cause existed. For the reasons that follow, the Court respectfully disagrees with these contentions.

The search orders issued by the superior court judge in July, August, and September 2017, authorized the cellular provider to give the St. Joseph County DIU the drug phone's precise location information, using "GPS Precision Location" technology, at reasonable intervals for twenty-four hours per day, seven days per week. The search orders did not authorize the release of the contents of any calls and messages. However, the orders indicated that they were issued pursuant to Federal Rule of Criminal Procedure 41 and Sections 3117, 3123, 3124, and 2703 of Title 18. While some of the statutory references were clearly inapplicable since they concern the use of pen registers and trap-and-trace devices, Rule 41 represents the standard source of authority for criminal search and arrest warrants. Moreover, the search orders not only recited the language of § 2703(d), but they explicitly stated that the searches were justified by probable cause.

In particular, the state judge declared that probable cause existed to believe that the users of the drug phone had been engaged in illegal drug dealing and that the apprehension of the users would be obtained through use of GPS location tracking technology. This finding was premised on affidavits from experienced DIU investigators which detailed controlled purchases of heroin that were set-up and executed by calling the drug phone. The DIU investigators conveyed their

---

whereabouts, *see United States v. Brewer*, 915 F.3d 408, 414–15 (7th Cir. 2019). Accordingly, the Court addresses the motions to suppress on their merits.

knowledge that drug traffickers typically use cellular devices to further their drug trafficking, along with their belief that the instant drug phone was being used to distribute heroin in South Bend. Thus, the DIU investigators opined that by acquiring the location information for the drug phone, the users' location, identity, and apprehension could be obtained.

Given the totality of the circumstances, the Court concludes that the state court judge's finding of probable cause—a finding that carries a presumption of correctness, *see United States v. McIntire*, 516 F.3d 576 (7th Cir. 2008)—was appropriate and that the orders sufficed to support use of GPS technology to gather location information for the drug phone. *See, e.g., United States v. Sanchez-Jara*, 889 F.3d 418, 421 (7th Cir. 2018), *cert. denied*. In so concluding, the Court notes that the defense's reliance on *United States v. Powell*, 943 F. Supp. 2d 759, 783 (E.D. Mich. 2013), *aff'd*, 847 F.3d 760 (6th Cir. 2017) is unavailing. In *Powell*, the warrant's affidavit failed to sufficiently set forth facts demonstrating a nexus between the cell phone and the criminal activity, where it did not state that the cell phone was used for drug trafficking. *Powell*, 943 F. Supp. 2d at 783. Unlike the affidavit in *Powell*, the DIU investigators in this case described with particularity how the drug phone was used to initiate and complete various heroin transactions. Additionally, the Court also rejects the defense's argument that a warrant's affidavit must specifically identify the defendant in order to be valid. Rather, the affidavit can simply provide a sufficient basis for believing that the individuals associated with the phone number are involved in illegal activity and the search is authorized based on the phone number's association with the crime. *See, e.g., United States v. Alejandre*, No. 16-CR-00053-3, 2019 WL 118506, at *2–3 (N.D. Ill. Jan. 7, 2019) (the affidavit did not actually claim that the number was used by the defendant; rather, it stated that it was used by an unknown kidnapping suspect and provided good reason for believing that the individual associated with that number was involved in the

kidnapping). In fact, the whole point of securing the search orders was to locate, identify, and apprehend those who were using the drug phone because no particular person could be identified as the primary user of the phone. And yet, there was probable cause to believe that the particular cellphone was being used by at least a dozen dealers to traffic in heroin. Accordingly, the search orders appropriately authorized law enforcement to follow the identified phone and to see where it went and when—such an order particularly describes the evidence to be acquired. *See Sanchez-Jara*, 889 F.3d at 421.

Because the search orders were supported by probable cause, the later discovery of evidence leading to the identification and indictment of the defendants need not be suppressed. Although probable cause supports the search orders, the Court turns to the issue of good faith.

**Good Faith**

An illegal search does not necessarily entitle a defendant to suppression of evidence if that evidence was obtained in good faith. The defense contends that the good faith exception does not apply here "for a myriad of reasons." But, the Court respectfully concludes that those reasons are without merit.

First, the defense argues that there could be no good faith reliance because *United States v. Jones*, 565 U.S. 400 (2012) requires location tracking to be authorized by individualized probable cause. But this argument is foreclosed by the undersigned's previous determination that probable cause existed for the search orders to issue.

Second, the defense argues that the standard articulated in *Davis v. United States*, 564 U.S. 229 (2011) has not been met to allow application of the good faith exception. *Davis* holds that the exclusionary rule does not apply when the police conduct a search in objectively reasonable reliance on binding appellate precedent. But, binding appellate precedent is not

always required because the good faith exception has been applied over time across a range of cases. In other words, *Davis* does not negate the fact that the exclusionary rule is not to be used to suppress evidence obtained as a result of nonculpable, innocent police conduct. *See Davis*, 564 U.S. 229, 236–37 ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations.") (citations omitted). Thus, the Court must consider whether the distinctions between this case and *Leon* and *Krull* made by the defense undermine the applicability of the good faith exception.

Under *United States v. Leon*, 468 U.S. 897 (1984), it is inappropriate to suppress evidence obtained pursuant to a later-declared invalid warrant if the executing officers reasonably relied on the warrant (or for our purposes, the search orders). *Id*. at 922–23; *United States v. Millbrook*, 553 F.3d 1057, 1061-62 (7th Cir. 2009). That the officers obtained the search orders is prima facie evidence of good faith. *Millbrook*, 553 F.3d at 1062. However, a defendant may rebut this by presenting evidence to establish that: (1) the issuing judge "'wholly abandoned his judicial role' and failed to 'perform his neutral and detached function,' serving 'merely as a rubber stamp for the police,'" *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) (quoting *Leon*, 468 U.S. at 914); (2) the affidavit supporting the search order "was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id*. (quoting *Leon*, 468 U.S. at 923); or (3) the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *Leon*, 468 U.S. at 923. In determining whether the good faith exception should apply in a particular case, the "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the [judge's] authorization." *Id*. at 922 n. 23. So even if the search

7

orders are facially invalid, the Court must review the text of the orders and the circumstances of the search to ascertain whether law enforcement might have reasonably presumed their validity. *See id*. at 923. The defense contends that the state court judge was misled by law enforcement's seeking a court order rather than a search warrant and reliance on statutes having no application. The defense further claims that the judge served merely as a rubber stamp for the DIU investigators by signing off on the confusing orders.

The Court cannot agree with the defense's contentions. Here, there is no evidence suggesting that the factual assertions set forth in the affidavits by DIU investigators were not true. Moreover, their testimony credibly established that they supplied the standard form affidavits and proposed orders to the state judge to obtain what they believed were search warrants authorizing the tracking of the drug phone's location. The DIU investigators even filed search warrant returns after executing the search. Thus, even if mistakes were made in preparing the applications, no one could reasonably call their actions "reckless." This is important because in deciding whether the extreme sanction of suppression is proper, under the *Leon* good faith exception, courts should consider whether the officers were merely negligent as opposed to having acted recklessly or deliberately. *See Herring v. United States*, 555 U.S. 135 (2009). It is also clear from the preceding discussion that it was objectively reasonable for DIU investigators to believe that probable cause existed to track the drug phone. Investigation by law enforcement revealed that many individuals were using the cellphone to take calls from customers seeking heroin and then complete the drug transactions. Controlled buys were executed by using the same phone. And regardless of the code citations recited in the applications and search orders, the state court judge explicitly found that probable cause existed on the basis of these sufficient

facts. Thus, consistent with *Leon*, exclusion of the location information is not required because it was collected in good faith.

Finally, case precedent forecloses the defense's argument that the good faith exception cannot apply under the standard articulated in *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987). In *United States v. Curtis*, the Seventh Circuit held that the good faith exception applies to pre-*Carpenter* collection of cell-site location information. 901 F.3d 846, 848 (7th Cir. 2018) (citing *Krull* and concluding that even though it is now established that the Fourth Amendment requires a warrant for the type of cell-phone data present here, exclusion of that information was not required because it was collected in good faith). Here, the DIU investigators believed in good faith that a federal statute, the SCA, allowed them to act as they did. Application of the exclusionary rule is unnecessary under these circumstances. *See Curtis*, 901 F.3d at 849. Accordingly, because of the good faith exception to the warrant requirement, the location tracking information was not illegally obtained. *See also United States v. Hammond*, No. 3:18-CR-5 RLM-MGG, 2018 WL 5292223, at *4 (N.D. Ind. Oct. 24, 2018).

So even if the search orders in this case were insufficient to authorize the location tracking of the drug phone—and to repeat, the undersigned does not believe that they were—the good faith exception would preclude suppression.

### III.  CONCLUSION

For those reasons, the Court DENIES the motions to suppress [DE 127; DE 132].

SO ORDERED.

ENTERED:  May 28, 2019

                                              /s/ JON E. DEGUILIO
                                         Judge
                                         United States District Court